# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

RODNEY L. GARROTT,

    Petitioner,

v.

DONALD HOLBROOK,

    Respondent.

Case No. C11-121-TSZ-JPD

REPORT AND RECOMMENDATION

## I. INTRODUCTION AND SUMMARY CONCLUSION

Petitioner, an inmate proceeding *pro se* and *in forma pauperis* who is currently incarcerated at the Washington State Penitentiary ("WSP") in Walla Walla, Washington, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Dkt. 12. Specifically, petitioner is challenging his March 15, 2006 jury conviction on one count of residential burglary in the King County Superior Court.[1] Dkt. 21, Ex. 1. Respondent has filed an answer contending that petitioner's claims lack merit, and the habeas petition should be dismissed. Dkt. 19. Petitioner has replied to the respondent's answer. Dkt. 23. After careful

---

[1] When this case was initiated, petitioner was incarcerated at the Airway Heights Corrections Center in Airway Heights, Washington. Dkt. 1. As a result, petitioner properly named Superintendent Maggie Miller-Stout as the respondent in his habeas petition. As petitioner has since been transferred to the WSP, the Court substitutes WSP's superintendent, Donald Holbrook, as respondent. *See* Fed. R. Civ. P. 25(d).

REPORT AND RECOMMENDATION
PAGE - 1

consideration of the briefs, the governing law, and the balance of the record, the Court recommends that petitioner's habeas petition, Dkt. 12, be DENIED and this case be DISMISSED with prejudice.

## II. BACKGROUND

### A. Petitioner's Commitment Offense and Direct Review

The Washington State Court of Appeals summarized the facts surrounding petitioner's residential burglary conviction as follows:

> On September 6, 2005, the State charged Garrott with one count of residential burglary based on an incident on March 7, 2005 in Tukwila. At the omnibus hearing on December 9, 2005, Garrott expressed dissatisfaction with his appointed counsel. He asked the court to appoint new counsel and also sought dismissal of the charge, arguing that the charge was the result of vindictive prosecution and that he was denied his right to a speedy trial and due process. The court denied the motion without prejudice to allow counsel an opportunity to investigate. Subsequently the trial court granted a joint motion for a continuance. Trial commenced on March 13, 2006. Counsel informed the court that after investigating, he found no basis to argue that Garrott's right to speedy trial had been violated. Because Garrott was represented by counsel, the court declined to permit Garrott to raise the issue. The following day, the court held a CrR 3.5 hearing and concluded that Garrott's statements to officers following his detention were admissible.
>
> Dan Knollmeyer testified that at about 1:45 p.m. on March 7, 2005, he heard an unusual noise at the house of his next door neighbor, Jim O'Connor. Knollmeyer's dog was barking loudly. Knollmeyer saw a man in O'Connor's driveway about fifteen feet away. The man was carrying what appeared to be a VCR or computer equipment and a smaller item. Officer Richard Mitchell received a physical description of the suspect and responded to the scene. A few blocks from O'Connor's house Officer Mitchell saw a man, later identified as Garrott, who fit the description. When Garrott saw the police car, he crossed the street and tried to mingle in a group of people. Officer Mitchell detained Garrott, who was sweating and breathing heavily and was carrying a VCR, camcorder, remote control, and women's jewelry. At trial O'Connor identified all the items as having been stolen from his house on March 7. Garrott told Officer Mitchell that he was coming from a friend's

> house, but he did not know the address and gave two different names for the friend. Officers informed Knollmeyer that they had a suspect who matched the description and possessed what appeared to be stolen items. Knollmeyer went to the area where Garrott was detained, saw him sitting in a police car and identified him; he also identified Garrott at trial. Detective Eric Lund found a broken window at O'Connor's house right after Garrott was detained.
> A jury found Garrott guilty as charged of residential burglary. The court imposed a standard range sentence of 84 months. Having been convicted of a felony, under RCW 43.43.754 Garrott was ordered to provide a biological sample for DNA identification analysis and inclusion in the State's DNA database.

Dkt. 21, Ex. 3.

Petitioner was convicted by a jury in King County Superior Court on March 15, 2006. *Id*., Ex. 1. The superior court entered the judgment and sentence on April 13, 2006. *Id*.

Petitioner appealed to the Washington State Court of Appeals. Dkt. 21, Ex. 4. However, the court affirmed the judgment and sentence, noting that "[t]he issues on appeal are clearly without merit." *Id*., Ex. 3 at 1. Petitioner's motion to modify the ruling was denied on April 15, 2008. *Id*., Exs. 8-9.

Petitioner filed a petition for review in the Washington Supreme Court on September 24, 2008. *Id*., Ex. 10. The Washington Supreme Court denied review without comment on February 4, 2009. *Id*., Ex. 11. The Washington State Court of Appeals issued its mandate on March 4, 2009. *Id*., Ex. 12.

    B.    <u>State Collateral Review</u>

Petitioner filed a motion challenging his conviction in the King County Superior Court on August 8, 2008. *Id*., Ex. 13. The court construed petitioner's motion as a personal restraint petition ("PRP"), and transferred it to the court of appeals. *Id*., Ex. 14. On August 5, 2008, the Washington State Court of Appeals denied the PRP on procedural grounds. *Id*., Ex. 15. The court issued a certificate of finality on February 13, 2009. *Id*., Ex. 16. In December 2009, petitioner attempted to file a motion for discretionary review in the Washington Supreme

Court, but that court rejected petitioner's motion as untimely. *Id*., Ex. 17.

In July 2009, petitioner filed another PRP in the Washington State Court of Appeals. *Id*., Ex. 18. However, the court denied petitioner's claims on August 3, 2009. *Id.*, Ex. 19. Petitioner's motion for discretionary review in the Washington Supreme Court was also denied in a commissioner's ruling on December 30, 2009. *Id.*, Exs. 20-21. The Washington Supreme Court denied petitioner's motion to modify the ruling without comment. *Id*., Exs. 22-23. The court of appeals issued the certificate of finality on April 7, 2010. *Id*., Ex. 24.[2]

    C.    <u>Federal Collateral Review</u>

On February 16, 2011, petitioner filed the instant 28 U.S.C. § 2254 petition for writ of habeas corpus. Dkt. 12. Petitioner is currently incarcerated at the WSP in Walla Walla, Washington.

### III.    ISSUES PRESENTED

Petitioner's habeas corpus petition raises the following four grounds for relief:

1. Petitioner alleges that the prosecutor committed prosecutorial vindictiveness by filing the charge in the current case in retaliation for petitioner's motion to withdraw his guilty plea in two separate cases.

2. Petitioner alleges that the prosecutor committed preaccusatorial delay by waiting six months to file charges against him in this case.

3. Petitioner alleges that the prosecutor committed misconduct by suppressing evidence and permitting false testimony at trial.

4. Petitioner alleges ineffective assistance of counsel stemming from his defense counsel's failure to investigate his alibi witnesses.

Dkt. 12 at 6-20.

---

[2] In October 2010, petitioner filed another motion in the King County Superior Court, which was construed as a PRP and transferred to the Washington State Court of Appeals. Dkt. 21, Ex. 25. On May 25, 2011, the court of appeals issued an order terminating review, and the Washington Supreme Court issued a decision regarding discretionary review on October 5, 2011. Although the decisions of these courts are not in the record before this Court, it is undisputed that the claims in the instant federal habeas petition are already exhausted.

REPORT AND RECOMMENDATION
PAGE - 4

## IV. DISCUSSION

### A. Standard of Review

Under the Anti–Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a habeas corpus petition may be granted with respect to any claim adjudicated on the merits in state court only if the state court's decision was *contrary to,* or involved an *unreasonable application* of, clearly established federal law, as determined by the Supreme Court, or if the decision was based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d) (emphasis added).

Under the "contrary to" clause, a federal habeas court may grant the writ only if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *See Williams v. Taylor*, 529 U.S. 362, 364-65 (2000). Under the "unreasonable application" clause, a federal habeas court may grant the writ only if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case. *Id.* The Supreme Court has made clear that a state court's decision may be overturned only if the application is "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 69 (2003).

Clearly established federal law, for purposes of AEDPA, means "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." *Lockyer*, 538 U.S. at 71-72. "If no Supreme Court precedent creates clearly established federal law relating to the legal issue the habeas petitioner raised in state court, the state court's decision cannot be contrary to or an unreasonable application of clearly established federal law." *Brewer v. Hall*, 378 F.3d 952, 955 (9th Cir. 2004) (citing *Dows v. Wood*, 211 F.3d 480, 485-86 (9th Cir. 2000)).

Finally, if a habeas petitioner challenges the determination of a factual issue by a state court, such determination shall be presumed correct, and the applicant has the burden of

rebutting the presumption of correctness by clear and convincing evidence. 28 U.S .C. § 2254(e)(1).

B. <u>Prosecutorial Vindictiveness Claim</u>

Petitioner alleges that the prosecutor's decision to file charges after petitioner moved to withdraw a guilty plea in a separate criminal proceeding constituted prosecutorial vindictiveness, in violation of his Fifth Amendment Due Process rights. Specifically, petitioner contends that the prosecutor argued against defense counsel's recommendation for Drug Offender Sentencing Alternative ("DOSA"), even though the prosecutor's commitment not to argue against the sentence was allegedly part of the plea agreement. Dkt. 12 at 6. Because of the prosecutor's alleged breach of the plea agreement, petitioner states that he "immediately ask[ed] defense counsel to withdraw the plea and [was] escorted out of [the] courtroom." *Id.* Petitioner then alleges that the prosecutor vindictively filed additional charges in another case "as a response to [the petitioner's] move to withdraw [an] unconstitutional plea." *Id.* 7.

Respondent argues that the petitioner is not "entitled to relief because this claim is not based upon clearly established federal law and would require the retroactive announcement and application of a new rule." Dkt. 19 at 12. Respondent further argues that the Supreme Court has never extended allegations of prosecutorial vindictiveness to pretrial charging decisions. *Id.* Rather, respondent asserts that the Supreme Court "has expressly concluded that such a presumption [of prosecutorial vindictiveness] does not apply to prosecutorial decisions made in the context of the pretrial plea bargaining process." *Id.* Finally, respondent notes that petitioner moved to withdraw his guilty plea in the separate case after the additional charge was filed, and that the true chronology of events "belies his habeas claim that the [s]tate filed the new charge in retaliation for his moving to withdraw his guilty plea." *Id.* at 17.

On appeal, the Washington State Court of Appeals held that nothing in the record supported a claim of vindictive prosecution. Dkt. 21, Ex. 3 at 3-4. The court of appeals noted that "[the petitioner] contends that the State filed the charge against him because he moved to

withdraw his guilty plea in another case." *Id.* However, the court held that "nothing in the record supports his argument, and the charge was supported by the evidence at trial." *Id.* at 4.

The United States Supreme Court has never held that the Constitution has been violated if a prosecutor to files additional charges after a defendant requests to withdraw a guilty plea. Rather, a prosecutor violates due process when he seeks additional charges solely to punish a defendant for exercising a constitutional or statutory right. *See Bordenkircher v. Hayes*, 434 U.S. 357, 363 (1978). In the context of pretrial plea negotiations, however, vindictiveness will not be presumed solely from the fact that a more severe charge followed or resulted from the defendant's exercise of a right where a defendant remains free to take or reject the bargain. *Id.* at 363-65; *United States v. Gallegos–Curiel*, 681 F.2d 1164, 1167-68 (9th Cir. 1982). In fact, the Supreme Court has held that "[t]he possibility that a prosecutor would respond to a defendant's pretrial demand for a jury trial by bringing charges not in the public interest that could be explained only as a penalty imposed on the defendant is so *unlikely* that a presumption of vindictiveness certainly is not warranted." *United States v. Goodwin*, 457 U.S. 368, 384 (1982) (emphasis in original).

The petitioner has not demonstrated that the court of appeals' decision denying his request for relief based on prosecutorial vindictiveness resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law. Petitioner alleges prosecutorial vindictiveness because petitioner moved to withdraw his guilty plea after the prosecutor argued against DOSA. However, respondent correctly notes that petitioner moved to withdraw his guilty plea after the additional charge was filed, and not before.

The prosecution also gave petitioner an opportunity to address all residential burglary charges at once, increasing petitioner's chance that any prison sentence for the charges could run concurrently. *Id.* at 4-25. Specifically, the transcript of the sentencing proceedings in an unrelated case reveal that the trial court delayed sentencing because the residential burglary charge underlying the instant habeas claim had been filed. Dkt. 21, Ex. 30 at 4. Although the

trial court urged petitioner to delay sentencing so that he could address all pending charges at once, petitioner insisted on proceeding to sentencing on the two prior charges. *Id.* Petitioner also decided at that time to make a motion to withdraw his guilty plea at sentencing. *Id.* Thus, the record does not reflect petitioner's assertion that the prosecutor filed charges vindictively after petitioner moved to withdraw his guilty plea. Rather, the record demonstrates that the charge was already filed before petitioner moved to withdraw his plea.

Moreover, the record does not support petitioner's argument that the prosecutor argued against DOSA in violation of the plea agreement. In fact, evidence in the record indicates that petitioner understood that the prosecutor would argue against DOSA. At petitioner's plea colloquy, the court asked petitioner if he would be requesting DOSA. Dkt. 21, Ex. 28 at 40. When petitioner responded affirmatively, the court asked, "But you understand the state is not agreeing to a DOSA recommendation, correct?" *Id.* Petitioner responded that he understood. *Id.* at 41. Thus, the record reflects that petitioner understood that the prosecutor would not be agreeing to DOSA, and the prosecutor did not vindictively file charges because petitioner moved to withdraw his guilty plea. Accordingly, the state court decision denying his prosecutorial vindictiveness claim was not contrary to, or an unreasonable application of, clearly established federal law.

### C. Prosecutorial Delay Claim

Petitioner alleges that preaccusatorial delay by the prosecution in his state court proceedings violated his Fifth Amendment rights. Dkt. 12 at 8. Specifically, petitioner asserts that he "was arrest[ed] on [March 7, 2005], held for seventy-two (72) hours, and released without [the prosecutor] filing . . . charge[s]." *Id.* Petitioner then states that after he moved to withdraw his plea in another matter on July 28, 2005, the prosecutor filed the additional charge for his March 7, 2005 arrest. *Id.* Petitioner asserts that the trial was delayed until June 13, 2006, approximately 15 months from the date of his original arrest. *Id.* Thus, petitioner argues that the delay prevented the defense investigator from being able to locate his alibi

witnesses, "resulting in . . . prejudicing petitioner [by violating] . . . [his] due process [rights] in [the] criminal proceeding." *Id.* at 9-10.

Respondent argues that the petitioner would not have been able to find the alleged alibi witnesses, even if charges had been filed sooner. Dkt. 19 at 20. Respondent notes that the petitioner was inconsistent when he talked to the police about the alibi witnesses, and states that the petitioner "has not shown that his alleged alibi witnesses even exist." *Id.* Respondent also asserts that even if petitioner's story about the alibi witnesses is true, petitioner "claimed that he knew the witnesses for only a week and had no means of contacting them after he was arrested and put in jail." *Id.* at 21. Thus, respondent argues that that the petitioner "fails to show [that] the pre-indictment delay caused actual prejudice, [and] he fails to establish a necessary prerequisite for a due process claim." *Id.* at 20.

The court of appeals found that petitioner failed to demonstrate that the six month delay in filing a charge resulted in actual prejudice. Dkt. 21, Ex. 3 at 4. Specifically, the court noted that:

> A prosecutor has broad discretion in making charging decision[s]. A defendant cannot prevail on a claim o[f] preaccusatorial delay unless he demonstrates actual prejudice resulting from the delay. The court will not infer prejudice from the prefiling delay; only if a defendant demonstrates actual prejudice will the court consider the State's reason for the delay and balance the State's interests against the prejudice. A mere allegation that witnesses are unavailable or that memories have dimmed is insufficient; the defendant must specifically demonstrate the delay caused actual prejudice to his defense. Garrott has not met this demanding standard.

*Id.* The court of appeals also noted that although petitioner identified three witnesses, he only identified them by first name and stated that he had only known them a week and had no means of contacting them after his arrest. *Id.*

The Due Process Clause protects against "oppressive" pre-indictment delay. *United States v. Lovasco*, 431 U.S. 783, 788 (1977). Establishing a denial of due process through pre-

REPORT AND RECOMMENDATION
PAGE - 9

indictment delay requires: (1) proof of actual, non-speculative prejudice from the delay; and (2) a showing that the delay, when balanced against the reason for the delay, offends those "fundamental conceptions of justice which lie at the base of our civil and political institutions." *United States v. Sherlock*, 962 F.2d 1349, 1353-54 (9th Cir. 1992) (quoting *Lovasco*, 431 U.S. at 790). The United States Supreme Court has held that "to prosecute a defendant following investigative delay does not deprive him of due process, even if his defense might have been somewhat prejudiced by the lapse of time." *Lovasco*, 431 U.S. at 796. Without a demonstration of actual prejudice, the reasons for the delay need not be considered. *See United States v. Ross*, 123 F.3d 1181, 1186-87 (9th Cir. 1997).

Petitioner argues that the six month delay in filing charges against him prevented his defense investigator from being able to locate his alibi witnesses. However, as noted above, mere allegations of prejudice will not suffice. Rather, the petitioner must establish that the delay resulted in actual prejudice. As noted by the respondent and the court of appeals, petitioner only identified the three purported alibi witnesses by their first names: Sharon, Julian, and Precious. Dkt. 21, Ex. 4 at 3. Petitioner stated that he had just met the alibi witnesses, and he "had no means of contact after [the March 2005] arrest and jail stay." *Id.* at 7. Even if the prosecutor had immediately filed charges, petitioner has not shown that he could have located the purported alibi witnesses.[3]

Thus, petitioner failed to demonstrate that any actual prejudice occurred as a result of the charging delay. The court of appeals' decision was not contrary to, or an unreasonable application of, clearly established federal law.

---

[3] Moreover, the Court notes that the victim's neighbor, Mr. Knollmeyer, testified at trial that he "saw a person walking on [the victim's] property." Dkt. 21, Ex. 34 at 35. Mr. Knollmeyer also testified that he did not see anyone else around the house. *Id.* at 44. Mr. Knollmeyer's testimony discredits the petitioner's assertion that he was with the purported alibi witnesses at the time of the burglary.

### D. Prosecutorial Misconduct Claims

Petitioner alleges that two instances of prosecutorial misconduct violated his Fifth Amendment rights. Petitioner first argues that the prosecutor committed misconduct by suppressing evidence of a solid wooden fence "separating [the] victim's property from [the] state's eyewitness." Dkt. 12 at 11. Petitioner further alleges that the prosecutor permitted the victim to testify falsely because the "victim's property was in disrepair with [a] broken [and] rotted window frame" and the victim falsely testified that the window was not broken before the alleged break-in. *Id.* The petitioner goes on to state that the prosecutor permitted this false testimony even though "[p]etitioner had no tools [when he was arrested,] nor were there any broken parts of [the] window present." *Id.*

Respondent argues that the petitioner cannot succeed on the merits of his prosecutorial misconduct claim.[4] Specifically, respondent asserts that there is no evidence that evidence relating to the wooden fence would have been useful to the petitioner. Dkt. 19 at 7. In fact, respondent notes that "[t]here is no evidence to refute the neighbor's testimony that from his house, he had a good view of the victim's yard." *Id.* at 8. Furthermore, respondent argues that "it defies common sense to say that the prosecution could have suppressed evidence of a fence [which is] visible to anyone on the street, including [petitioner's] defense investigator." *Id.* Finally, respondent asserts that petitioner cannot establish that the prosecutor permitted false testimony by the victim because "[t]here is no evidence the prosecution should have known that a window was broken and . . . [that] the victim testified falsely." *Id.* at 6. Thus, respondent argues that petitioner cannot demonstrate that the state court decision to dismiss the

---

[4] Respondent first argued that petitioner's prosecutorial misconduct claims are procedurally barred because of the "state statute of limitations, the state rule prohibiting successive petitions, and the state rule requiring adequate briefing of allegations." Dkt. 19 at 5. However, upon review of the relevant state court decision, which simply denied petitioner's claims as "conclusory allegations," the Court directed respondent to file a supplemental answer, addressing the merits of petitioner's prosecutorial misconduct claims. Dkt. 26.

REPORT AND RECOMMENDATION
PAGE - 11

prosecutorial misconduct claim was contrary to, or was an unreasonable application of, federal law.

The Washington State Court of Appeals held that petitioner offered "nothing more than conclusory allegations to support this claim." Dkt. 21, Ex. 19 at 2. The state court further noted that petitioner's allegations of prosecutorial misconduct are based on matters outside the record, and petitioner must meet the following requirements:

> the petitioner must demonstrate that he has competent, admissible evidence to establish the facts that entitle him to relief. If the petitioner's evidence is based on knowledge in the possession of others, he may not simply state what he thinks those others would say, but must present their affidavits or other corroborative evidence. The affidavits, in turn, must contain matters to which the affiants may competently testify. In short, the petitioner must present evidence showing that his factual allegations are based on more than speculation, conjecture, or inadmissible hearsay.

*Id.* at 2-3 (citations omitted). Thus, the state court dismissed petitioner's allegations of prosecutorial misconduct for failure to comply with these requirements.

### *1. Suppression of Evidence Claim*

A prosecutor has a duty to reveal exculpatory evidence. *Brady v. Maryland*, 373 U.S. 83 (1963). Suppression by the prosecution of evidence favorable to an accused violates due process where the evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecutor. *Id.* Material evidence is that which, if made available, would tend to exculpate or reduce the penalty. *Id.* There is constitutional error only if there exists a reasonable probability that had the evidence been disclosed to the defense, the result of the proceeding would have been different. *United States v. Bagley*, 473 U.S. 667, 682 (1985). There is no violation of due process where the evidence demonstrates only "a mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial." *United States v. Agurs*, 427 U.S. 97, 109-12 (1976).

Here, petitioner has failed to establish that the prosecutor committed misconduct by

suppressing evidence of a wooden fence. Petitioner argues that the wooden fence obstructed the view of the witness who identified petitioner as the person who committed the residential burglary. However, petitioner has not established that the wooden fence obstructed the witness's view, or that the prosecutor committed misconduct by failing to mention the fence. In fact, the witness stated during his testimony that he had to move about his home to be able to see the victim's property. Dkt. 21, Ex. 34 at 33-34. Specifically, he stated that he initially looked at the victim's home "from [his] deck area" and attempted to view as much of the victim's property as possible. *Id.* The witness indicated that he could not see the victim's entire home from inside his house, but he could see the victim's yard, which is where he observed the petitioner walking away from the victim's home, carrying electronic items. *Id.* In light of the witness's testimony that he could not see the victim's entire home without moving to his deck or to other rooms in his house, the prosecutor was not also required to provide the jury with evidence of a wooden fence that could have obstructed the witness's view.

Moreover, as noted by the respondent, the prosecution could not have suppressed evidence of the wooden fence because it is "visible to anyone on the street, including [petitioner's] defense investigator." Dkt. 19 at 8. A wooden fence separating two pieces of property is not a piece of evidence that can be surreptitiously hidden. Rather, it is visible to the public and was available for the petitioner to use at trial to challenge the eyewitness identification. Petitioner has failed to demonstrate that the prosecutor committed misconduct by failing to mention or disclose the existence of the wooden fence. Thus, petitioner has not established that the state court's decision denying his claim of prosecutorial misconduct was contrary to, or an unreasonable application of, clearly established federal law.

### 2. *False Evidence Claim*

A conviction obtained through the use of false evidence, known to be false by representatives of the state, violates due process. *Napue v. Illinois*, 360 U.S. 264, 269 (1959)

REPORT AND RECOMMENDATION
PAGE - 13

(holding that the knowing use of false evidence by the state, or the failure to correct false evidence, violates due process). *See also Mancuso v. Olivarez*, 292 F.3d 939, 957 (9th Cir. 2002). To demonstrate a due process violation under *Napue,* "the petitioner must show that (1) the testimony (or evidence) was actually false, (2) the prosecution knew or should have known that the testimony was actually false, and (3) that the false testimony was material." *United States v. Zuno–Arce*, 339 F.3d 886, 889 (9th Cir. 2003). False evidence is material if "there is any reasonable likelihood that the false evidence could have affected the judgment of the jury." *Libberton v. Ryan*, 583 F.3d 1147, 1164 (9th Cir. 2009) (citation omitted).

Petitioner has failed to establish that the prosecutor permitted false testimony in violation of federal law. Petitioner has merely asserted, in a conclusory fashion, that the victim of the residential burglary presented false testimony on the stand. Petitioner argues that the victim's home was in disrepair and that the victim falsely testified that the window was not broken before the break-in. Petitioner then asserts that the prosecutor knew the testimony was false and permitted the false testimony. As noted above, in order to prove that the prosecutor permitted false testimony, the petitioner must show that the testimony was false and that the prosecutor knew the evidence was false. Petitioner has not provided any evidence to support his assertions that the victim's window was broken before the residential burglary. Even if the victim lied during his testimony, petitioner has not demonstrated that the prosecutor knew or should have known that the testimony was false. Thus, the petitioner fails to establish that the prosecutor permitted false testimony in violation of petitioner's due process rights.

Moreover, petitioner has not demonstrated that the allegedly false testimony was material. Petitioner must demonstrate that the false testimony could have affected the judgment of the jury. The jury heard testimony from a witness that petitioner was seen leaving the scene of the residential burglary with electronics in his possession. Dkt. 21, Ex. 34 at 35-40. The jury also heard testimony from an officer that the petitioner was found near the scene of the residential burglary. *Id.* at 17. Finally, jurors heard testimony from the victim in this

case that items were taken from his home. *Id.* at 45-53. In light of the evidence against him, the petitioner has failed to demonstrate that the allegedly false testimony was material and could have impacted the jury's finding of guilt. Accordingly, petitioner has failed to demonstrate that the state court's dismissal of his prosecutorial misconduct claim was contrary to, or an unreasonable application of, clearly established federal law.

### E. Ineffective Assistance of Counsel Claim

Petitioner alleges that his trial counsel rendered ineffective assistance, in violation of his Sixth Amendment rights. Specifically, petitioner states that defense counsel "fail[ed] to consult or visit [with the petitioner] . . . regarding [the] case before court or [to] investigate alibi or alibi witnesses." Dkt. 12 at 13. Petitioner asserts that he obtained records from his defense counsel's employer which indicated that defense counsel did not investigate petitioner's case, even though defense counsel stated on the record that he hired a defense investigator to find alibi witnesses. *Id.* at 15. Petitioner submitted his defense attorney's time records to demonstrate that the defense attorney allegedly did not hire an investigator or investigate the petitioner's case. *Id.* at 40-42.

Respondent argues that petitioner's "counsel adequately advocated on his behalf." Dkt. 19 at 24. Respondent notes that petitioner's counsel cross-examined each witness and argued during closing that the state could not prove its case because of the lack of evidence that petitioner was ever in the home. *Id.* Moreover, the respondent notes that petitioner's "counsel indicated that he tried to contact [the] purported witnesses, but had no success." *Id.* Thus, respondent argues that the state court decision denying the ineffective assistance of counsel claim was not unreasonable. *Id.* at 25.

The court of appeals rejected petitioner's allegations of ineffective assistance of counsel. Dkt. 21, Ex. 3 at 4-5. Specifically, the court noted that petitioner must "demonstrate that his counsel's representation was so deficient that it fell below an objective standard of reasonableness and that the deficient representation actually prejudiced him." *Id.* at 4. The

court also noted that "nothing in the record supports [petitioner's] argument that counsel failed to adequately investigate and prepare for trial." *Id.* at 5.

The Sixth Amendment guarantees a criminal defendant the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Claims of ineffective assistance of counsel are evaluated under the two-prong test set forth in *Strickland.* Under *Strickland,* a defendant must prove (1) that counsel's performance was deficient and, (2) that the deficient performance prejudiced the defense. *Id.* at 687. The reviewing court need not address both components of the inquiry if an insufficient showing is made on one component. *Id.* at 697. Furthermore, if both components are to be considered, there is no prescribed order in which to address them. *Id.*

With respect to the first prong of the *Strickland* test, judicial scrutiny must be highly deferential. *Id.* at 689. There is a strong presumption that counsel's performance fell within the wide range of reasonably effective assistance. *Id.* A petitioner must show that counsel's performance fell below an objective standard of reasonableness. *Id.* at 688. In order to prevail on an ineffective assistance of counsel claim, a petitioner must overcome the presumption that counsel's challenged actions might be considered sound trial strategy. *Id.* "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689.

The second prong of the *Strickland* test requires a showing of actual prejudice related to counsel's performance. In order to establish prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

As noted by the state court, "nothing in the record supports [petitioner's] argument that counsel failed to adequately investigate and prepare for trial." *Id.* at 5. Petitioner did submit

REPORT AND RECOMMENDATION
PAGE - 16

defense counsel's time records as alleged evidence that his attorney did not properly investigate the trial. However, the records indicate that counsel spent many hours preparing for trial, including preparing motions and having teleconferences. Dkt. 12 at 40-42. In fact, defense counsel stated on the record that "when we initially reviewed this case . . . [petitioner did] provide some information. I did retain an investigator and attempted to locate those witnesses and wasn't able to do so." Dkt. 21, Ex. 34 at 13. This statement undermines petitioner's assertion that defense counsel did not investigate the case.

Moreover, defense counsel advocated for petitioner during trial, noting that the state had failed to provide concrete evidence that the petitioner had been in the home during the residential burglary. *Id.*, Ex. 35 at 13. During his closing remarks, defense counsel underscored the fact that the prosecutor did not present any physical evidence that petitioner had entered the home. *Id.* at 13-14. Defense counsel also argued for lesser included charges and cross-examined every witness. *Id.*, Ex. 34 at 26-30, 40-45, 53, 57; *Id.*, Ex. 35 at 4. As noted by the state court, petitioner has not established that his defense counsel failed to investigate or prepare for trial. In light of the deferential nature of a court's review of ineffective assistance of counsel claims, petitioner has failed to establish that counsel's performance fell outside the wide range of reasonably effective assistance. Thus, the Court finds that the state court decision denying petitioner's ineffective assistance of counsel claim was not contrary to, or an unreasonable application of, clearly established federal law.

F. <u>Certificate of Appealability</u>

A petitioner seeking post-conviction relief under 28 U.S.C. § 2254 may appeal a district court's dismissal of his federal habeas petition only after obtaining a certificate of appealability from a district or circuit judge. A certificate of appealability may issue only where a petitioner has made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(3). A petitioner satisfies this standard "by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that

jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Under this standard, this Court concludes that petitioner is not entitled to a certificate of appealability with respect to any of the four grounds asserted in his habeas petition.

## V. CONCLUSION

For the foregoing reasons, the Court recommends that petitioner's habeas petition, Dkt. 12, be DENIED, and this case be DISMISSED with prejudice. A proposed order accompanies this Report and Recommendation.

DATED this 17th day of November, 2011.

JAMES P. DONOHUE
United States Magistrate Judge